Filed 1/24/24  P. v. Aragon CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON FRANK ARAGON,<br><br>    Defendant and Appellant. | B324564<br><br>(Los Angeles County<br>Super. Ct.  No. LA054712-01) |

APPEAL from an order of the Superior Court of Los Angeles County.  Joseph A. Brandolino, Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jason Aragon appeals the denial of his petition for resentencing. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.     *Procedural History*

In 2008, Aragon was convicted of attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)) and assault with a firearm (§ 245, subd. (a)(2)). With respect to both counts, the jury found true the allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)) and not true the allegation that Aragon personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1192.7, subd. c)). With respect to the attempted murder conviction, the jury found not true the allegation that the attempted murder was convicted willfully, deliberately, and with premeditation (§§ 664, subd. (a), 1192.7, subd. (c)). Aragon was sentenced to 24 years in state prison.

In 2022, Aragon filed a petition for resentencing pursuant to former section 1170.95, now recodified as section 1172.6 (Stats. 2022, ch. 58, § 10). After appointing counsel for Aragon and receiving the parties' briefing, the court concluded the petition did not establish a prima facie showing that Aragon was eligible for resentencing because there was no indication he was convicted under an implied malice theory of attempted murder.

Aragon appeals.

---

[1]     Undesignated statutory references are to the Penal Code.

II.    *Evidence Presented at Trial*

In November of 2006, Aragon met and began dating Veronica Villasenor.  Villasenor told Aragon about Avante Adkins, a prior boyfriend who had been violent with her and had kept her van.  In January 2007, Aragon got a job at a telemarketing company based on his connections with a friend named Julio Pereira.  Unbeknownst to Aragon, Adkins was the man who hired him.

When Aragon told Villasenor about the interview and his new employer, she recognized he was talking about Adkins and told him not to take the job.  She explained that Aragon's new boss, whom Aragon was scheduled to meet later so Aragon could sell him marijuana, was actually her former boyfriend.  Aragon became excited and "pumped up," and said he would try to get her van back by befriending Adkins.

That night, Aragon told Villasenor he was going to "hang out" with his cousin George, but he actually went to the office.  Outside the office, Pereira attempted to complete Adkins's drug transaction with Aragon, but Aragon said he wanted to see and speak with Adkins.  Adkins went outside with Aragon.  After several minutes, Pereira heard someone running outside, and Adkins stumbled into the office saying he had been shot.  Adkins said Pereira's friend had shot him.

That night, Aragon initially told Villasenor he and Adkins had been fighting when Aragon heard gunshots.  Aragon said he and George left and went to Villasenor's home.  Aragon said he did not know who was shooting or what happened but someone fired a gun and he left.  Later, Aragon told Villasenor he and George went to the office, where he (Aragon) asked Adkins if he knew Veronica.  Adkins said, "No.  Veronica who?"  This angered

Aragon, and the men started to fight. Aragon said he shot Adkins because Adkins choked him.

After Aragon was arrested, he informed Villasenor that George would come to her home to retrieve the gun. Villasenor saw George go into her back yard, but she did not see if he had picked up anything. Aragon told Villasenor everything would be all right because the police did not have the gun or any evidence.

Villasenor initially spoke to the police because they threatened to take her children away if she did not cooperate. At that time she told them Aragon's initial story, that Aragon and Adkins fought and a shot was fired, but Aragon did not know where the shot came from. Subsequently, Villasenor's relationship with Aragon soured when she learned he had married someone else. Villasenor then provided details to the police that she had not previously disclosed.

At the hospital, Adkins told police that during the incident, someone said, "Shoot him. Shoot him." Adkins identified Aragon from a photographic lineup and stated Aragon had kicked him, punched him, and shot him in the stomach. At trial, Adkins denied knowing who shot him.

## DISCUSSION

I.    *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the felony murder rule and the natural and probable consequences doctrine as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1,

subd. (f).) Senate Bill No. 1437 amended section 188 to require that a principal "shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.)

Senate Bill No. 1437 also added what is now section 1172.6, providing a procedure by which those convicted of murder under the former law can seek retroactive relief if the amendments affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 2.) Senate Bill No. 775 (2021–2022 Reg. Sess.) amended section 1172.6 to permit individuals convicted of attempted murder on a natural and probable consequences theory to petition for relief as well. (Stats. 2021, ch. 551, § 2.)

When a petitioner files a section 1172.6 petition, the court first appoints counsel if requested, and then conducts a prima facie analysis of the petitioner's eligibility, with briefing from the parties. (§ 1172.6, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 961–970 (*Lewis*).) In ascertaining whether a defendant has made a prima facie case for relief, the trial court may look at the record of conviction, which will necessarily inform its "prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual [perpetrator], or (2) the petitioner was not the actual [perpetrator], but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual [perpetrator], (3) the petitioner

5

was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  This is a purely legal conclusion, which we review de novo.  (See *Lewis*, *supra*, 11 Cal.5th at p. 961.)

II.    ***Jury Instructions***

The jury was instructed on aiding and abetting liability with CALCRIM Nos. 400 and 401.  CALCRIM No. 400, as given here, provides that a person "may be guilty of a crime in two ways.  One, he may have directly committed the crime.  I will call that person the perpetrator.  Two, he may have aided and abetted a perpetrator, who directly committed the crime.  A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it."  (Former CALCRIM No. 400.)

CALCRIM No. 401, as given here, sets forth the elements of aiding and abetting liability.  "To prove that the defendant is guilty of a crime based on aiding and abetting the crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4.  The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.  [¶]  Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  (CALCRIM No. 401.)

6

The court also instructed the jury with CALCRIM No. 600: "The defendant is charged in Count One with Attempted Murder. [¶] To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person." (CALCRIM No. 600.)

The jury was not instructed on the natural and probable consequences doctrine.

### III. *Intent to Kill*

Aragon argues he was convicted of attempted murder under aiding and abetting jury instructions that did not require the aider and abettor to share the actual perpetrator's intent to kill, and that he therefore may have been convicted on an imputed malice theory even though no natural and probable consequences theory was presented to the jury. He contends CALCRIM No. 401 was confusing and inadequate because it did not specify to which of the charged crimes the instruction was intended to apply, and the phrase "the crime" could have referred to either the attempted murder or the assault with a firearm. We are not persuaded.

We "must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions" (*People v. Burton* (2018) 29 Cal.App.5th 917, 925) and the jurors are "presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) CALCRIM No. 401 instructed the jury that to find Aragon guilty of "a crime" based on "aiding and abetting that crime," the People had to prove he knew the perpetrator

7

intended to commit "the crime" and Aragon intended to aid and abet the perpetrator in committing it. The jury was told that a person aids and abets "a crime" if he knows of the perpetrator's unlawful purpose and intends to aid the perpetrator's commission of "*that* crime." (Italics added.) The jury was also instructed by CALCRIM No. 600 that attempted murder requires the intent to kill.

Therefore, CALCRIM Nos. 600 and 401 together advised the jury that for a person to be guilty of attempted murder as an aider and abettor, the person had to know the perpetrator intended to kill and to have intended to aid the perpetrator in committing the killing. We find it implausible that the jury could have interpreted the repeated references to "the crime" or "a crime" in CALCRIM No. 401 to mean a different crime than the offense the jury was evaluating—that is, we cannot conceive of a reasonable jury reading CALCRIM No. 401 to invite it to decide whether Aragon was guilty of the crime of attempted murder as an aider and abettor by determining whether he aided and abetted a different crime. Contrary to Aragon's assertion, no reasonable jury applying CALCRIM Nos. 400, 401, and 600 could have found Aragon guilty of attempted murder as an aider and abettor without finding he had the intent to kill.

Our view is not changed by the jury's not true finding on the special allegation that the attempted murder was committed willfully, with deliberation, and with premeditation. Aragon argues the not true finding on the allegation means the jury "must have decided [he] did not intend to kill." Logically, the jury's negation of the conjunction—its rejection of a multi-element allegation as a whole—does not signify that the jury necessarily rejected each element of that allegation. All we may

8

conclude from the jury's not true finding on the allegation that the attempted murder was committed "willfully, deliberately, and with premeditation" is that the jury believed that one or more of those conditions did not apply, not that it must have found all three conditions absent. Therefore, the jury's finding cannot be interpreted as an express finding that he had no intent to kill, as Aragon argues. To the contrary, as discussed above, under the instructions given the jury could not have convicted Aragon of attempted murder unless it found he intended to kill.

Aragon complains that although the prosecutor argued he was the shooter and he intended to kill Adkins, "the prosecutor never argued that appellant as an aider and abettor personally acted with express malice, as required for an attempted murder conviction as an aider and abettor." It appears that when the prosecutor addressed this alternative theory of guilt, the primary theory being that Aragon was the actual shooter, the prosecutor did not specifically argue Aragon acted with express malice, although he did argue that even if a person other than Aragon was the shooter, they shared a common purpose of retribution, Aragon knew what they were about to do, and Aragon intended either through words or conduct to assist in the commission of the crime. However, Aragon does not allege the prosecutor misstated the law, nor did he object to the prosecutor's argument. Additionally, the jury was instructed with CALCRIM No. 200, providing that if the jury believed the attorneys' comments on the law conflicted with the court's instructions, they were to follow the court's instructions; and immediately before closing argument, the court reiterated that if an attorney misstated the law the jury was to rely "upon the law as I have stated it to you." Between these instructions and the court's other instructions

requiring the aider and abettor to share the perpetrator's intent to kill in order to be convicted of attempted murder on an aiding and abetting theory, we perceive no likelihood that the jury would have understood the prosecutor's failure to explicitly argue Aragon acted with express malice as authorization to convict Aragon of attempted murder without him intending to unlawfully kill. (*People v. Smith* (2005) 37 Cal.4th 733, 739 [express malice and the intent to unlawfully kill are essentially the same].)

Aragon next argues that the "equally guilty" language in former CALCRIM No. 400 allowed the "jury to convict a defendant of murder or attempted murder based on the mental state of the perpetrator, without considering the defendant's own mental state." (Former CALCRIM No. 400 ["A person is equally guilty of the crime whether he . . . committed it personally or aided and abetted the perpetrator who committed it"].) While we recognize courts have considered the "equally guilty" language problematic in at least some instances (see *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165; *People v. Nero* (2010) 181 Cal.App.4th 504, 518), we do not judge a single jury instruction in isolation. (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1330–1331.) Here, although the jury was told that an aider and abettor is "equally [as] guilty" as the direct perpetrator, it was also instructed by CALCRIM No. 401 that an aider and abettor must (1) know of the perpetrator's intent to commit the crime, (2) intend to facilitate or assist the perpetrator in committing the crime, and (3) act in a manner that assists or facilitates the perpetrator's commission of the crime. Therefore, the jury was told that to find Aragon guilty of attempted murder as an aider and abettor, he must have been aware of the shooter's intent to kill and intentionally facilitated the commission of the

10

attempted murder. "This instruction advised the jury that it must base its decision of each [person's] liability not simply on the mental state of the direct perpetrator of the crime, but on that [person's] state of mind and the extent to which he knew of and intended to facilitate the purpose contemplated by the perpetrator." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 625.)

Because the jury instructions established that the jury necessarily had to find Aragon acted with the intent to kill to be guilty of attempted murder on an aiding and abetting theory, we reject Aragon's assertion that he may have been convicted under a theory of imputed malice that was for all practical purposes a theory of natural and probable consequences. The trial court properly denied Aragon's petition at the prima facie analysis stage because Aragon was ineligible for section 1172.6 relief as a matter of law.[2]

---

[2]     The parties also dispute the scope of section 1172.6, with Aragon arguing relief is available to persons whose attempted murder convictions were based on any theory in which malice was imputed solely on the basis of a person's participation in a crime, and the People maintaining section 1172.6 relief is limited to attempted murder convictions based on the natural and probable consequences doctrine. We need not resolve this debate because, as discussed above, the record shows the jury was instructed on a direct theory of aiding and abetting with the instruction that an attempted murder conviction requires the intent to kill. Therefore, if Aragon was convicted of attempted murder as an aider and abettor rather than as the direct perpetrator, the jury necessarily found him to be a direct aider and abettor who had the intent to kill, making him ineligible for relief as a matter of law under either party's interpretation of the statute. "Direct aiding and abetting remains a valid theory of

11

## DISPOSITION

The order denying the petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.

---

attempted murder after the enactment of Senate Bill No. 775."
(*People v. Coley* (2022) 77 Cal.App.5th 539, 548.)